## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:21-cv-02474-TWT |
| v. | ) ) | |
| KHAMLAI LODGING, LLC, et al. | ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff MESA Underwriters Specialty Insurance Company ("MUSIC") hereby submits this Brief in Support of its Motion for Judgment on the Pleadings, respectfully showing the court as follows:

## I.      INTRODUCTION

This is an insurance coverage dispute arising from allegations that hotel owners, operators, and franchisors negligently or intentionally allowed minors to be sexually trafficked on their premises.  This Court should grant judgment on the pleadings to MUSIC because the language included in the applicable assault or battery exclusion ("the AB Exclusion") endorsed to the governing insurance policy (the "Policy") precludes coverage for all such allegations.

In a separate, underlying lawsuit (the "Underlying Case"),[1] N.R. and R.I. ("Tort Claimants") allege they were trafficked for sex at a Red Roof Inn in Norcross, Georgia (the "Norcross Red Roof Inn"). Tort Claimants allege Khamlai Lodging, LLC and Khamlai Management, LLC (the "Khamlai Entities") own and operate the Norcross Red Roof Inn, and that Red Roof Inns, Inc. and Red Roof Franchising, LLC ("Red Roof Entities") franchised the Red Roof brand to the Khamlai Entities and maintained some control over the hotel. In the Underlying Case, Tort Claimants allege that the Khamlai Entities and Red Roof Entities (collectively, the "Tort Defendants") negligently failed to prevent Tort Claimants from being sexually trafficked at the Norcross Red Roof Inn and/or that they intentionally profited from or participated in such trafficking.

After Tort Claimants filed the Underlying Case, the Khamlai Entities submitted an insurance claim to MUSIC and requested a defense. However, the Policy includes the AB Exclusion, which precludes coverage for any allegation *in any way related to* an "assault" or "battery." "Assault" is defined to include any "act… or threat to inflict injury" including "sexual abuse or harassment." "Battery" is defined to include the "use of force" including any "offensive touching or sexual

---

[1] The Underlying Case is <u>N.R. and R.I. v. Red Roof Inns, Inc., et al.</u>, pending in the Superior Court of Gwinnett County, Civil Action File No. 20-A-0487-9.

molestation."  Tort Claimants allege that Tort Defendants' misconduct resulted in Tort Claimants being forcibly sexually trafficked, sexually assaulted by hotel patrons, and being held against their will to be sex trafficked.  All of these allegations *per se* constitute "assault" or "battery" under the AB Exclusion because (i) all involve the use of force or threat to use force and (ii) all constitute allegations of "sexual abuse or harassment" or "offensive touching or sexual molestation."  Fatal to any coverage afforded under the Policy, all such allegations "in any way relate to" assault or battery.  As a result, all are excluded, and the Court should declare that MUSIC has no duty to defend or indemnify Tort Defendants.

## II.    BACKGROUND

### A.    The Policy

Effective September 25, 2015, MUSIC issued the Policy to Named Insured Red Roof Inn – Norcross GA.  Doc 1, ¶ 18 (alleging a true and accurate copy of the Policy is attached); Doc 23, ¶ 18 (admitting same); Doc 24, ¶ 20 ("the Red Roof Defendants admit that MUSIC issued the Policy and refer to the original or an authenticated copy of that document"); Doc 13, ¶ 18 (admitting).  On February 18, 2016, the Additional Insured-Granter of Franchise Endorsement—CG 20 29 04 13— became effective, adding the Red Roof Entities as additional insureds for certain coverage.  Doc 1-1, pp. 4, 108.  On August 12, 2016, Khamlai Lodging, LLC was

3

added as a Named Insured by Endorsement #4.  Id., p. 118.

The Policy includes commercial general liability coverage ("CGL").  See generally Doc 1-1, p. 27.  Under the CGL Form, Coverage A covers bodily injury and property damage, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.…

Id.

Coverage B covers "personal and advertising injury," which is defined to include, *inter alia*, "false arrest, detention or imprisonment."  Id., p. 41.  Coverage B provides, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.…

Id., p. 32.

By endorsement, the Policy contains the AB Exclusion, which provides:

> This insurance does not apply to locations specified in the above Schedule for "bodily injury", "property damage", "personal and

4

advertising injury" … caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" when that "assault" or "battery" is caused by, arising out of, or results from, in whole or in part from:

A. The direct or indirect instigation, instruction or direction, by you, your employees, patrons or any other persons, or

B. The failure to provide a safe environment including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or

C. The negligent employment, investigation, supervision, hiring, training or retention of any person, or

D. Negligent, reckless, or wanton conduct by you, your employees, patrons or any other persons, or

E. The use of force, whether excessive or not, to protect persons or property whether or not the "bodily injury", "property damage", or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of any insured; or

F. The failure to render or secure medical treatment or care necessitated by any "assault" or "battery".

. . .

III. For the purpose of this endorsement only, the following definitions are added to SECTION V – DEFINITIONS

A. "Assault" means any intentional act, or attempted act or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, sexual abuse or harassment, intimidation, verbal abuse, and any threatened harmful or offensive contact between two or more persons.

5

B. "Battery" means the intentional or reckless use of force including a physical altercation or dispute between persons, or offensive touching or sexual molestation against another, resulting in injury whether or not the actual injury inflicted is intended or expected. The use of force includes, but is not limited to the use of a weapon.

Id., pp. 16-17.

**B.    The Underlying Complaint and the Claim**

On November 4, 2020, Tort Claimants filed the Underlying Case against Tort Defendants.  See Doc 1-2 (the "Underlying Complaint"), p. 2; Doc 1, ¶ 32 (alleging a true and accurate copy of the Complaint is attached); Doc 23, ¶ 32 (admitting same); Doc 24, ¶ 32 (admitting same); Doc 13, ¶ 32 (admitting same).  In the Underlying Complaint, Tort Claimants allege they were trafficked for sex at the Norcross Red Roof Inn.  See Doc 1-2, ¶ 5, ¶¶ 95-161.  In addition, they allege that Tort Defendants "owned, managed, supervised, operated, oversaw, controlled the operation of and/or were inextricably connected to the renting of rooms" at the Norcross Red Roof Inn.  See id., ¶ 5.

Tort Claimants generally set forth three categories of allegations in the Underlying Complaint: (i) they were forcibly trafficked for sex, (ii) they were sexually assaulted and/or battered by patrons, and (iii) they were harbored, held, confined and detained against their will in order to be trafficked for sex.  Examples of such allegations are set forth below:

6

Forcible sex trafficking under threat of injury:

- "While [Tort Claimants] were trafficked for sex at the Norcross Red Roof Inn, they were prostituted by being forced to perform sexual acts in exchange for money or other items of value." Id., ¶ 133.

- "[Tort Claimants] … were forced to engage in sexual acts in exchange for money." Id., ¶ 141.

- Tort Claimants "suffered substantial physical, emotional, and psychological harm …." Id., ¶ 51.

Sexual assault or battery by patrons:

- "While [Tort Claimants] were trafficked at the Norcross Red Roof Inn, 8–10 older men visited the sex trafficker's rooms each day, each for short periods of time. [Tort Defendants] knew or should have known that the number of daily, older male visitors to the room was obviously indicative of not only prostitution, but also of minor sex trafficking, and [Tort Defendants] negligently failed to control or monitor the frequent male visitors." Id., ¶ 30.

- Tort Claimants were "sold for sex to a buyer in the hotel room…." Id., ¶ 31.

Harbored, held, confined or detained against their will for the purpose of being

sexually trafficked:

- [Tort Defendants] participated in or allowed the "holding, confining, and detaining persons who were forced to engage in sexual acts in exchange for money...." Id., ¶ 142

Based on these allegations, Tort Claimants assert against Tort Defendants (i) a negligence claim for purportedly allowing and failing to prevent Tort Claimants from being sex trafficked and (ii) two RICO claims for directly benefiting from or participating in racketeering activities with regard to the sex trafficking of Tort Claimants. See id., ¶¶ 95-161.

The Khamlai Entities requested a defense from MUSIC in the Underlying Case, which MUSIC is currently providing subject to a reservation of rights. Doc 1, ¶ 16 (alleging same); Doc 23, ¶ 16 (admitting same). While the Red Roof Entities have not to date requested a defense from MUSIC or tendered any claim to MUSIC related to the Underlying Case, they are Additional Insureds under the Policy. [2] Doc 1-1, p. 108.

---

[2] In the Underlying Case, MUSIC understands that the Red Roof Entities have reached a settlement with Tort Claimants and are in the process of formalizing that settlement and their release from liability, which will result in the Red Roof Entities' dismissal with prejudice from the Underlying Case. Upon that dismissal, MUSIC expects that the Red Roof Entities will seek dismissal from this action as they will no longer have standing in the declaratory relief sought here.

## III.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The pleadings are closed "when a complaint and answer have been filed." Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist., 631 F. App'x 851, 853 (11th Cir. 2015).  "Judgment on the pleadings is appropriate when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir. 1996).  "The court applies the same standard to a motion for judgment on the pleadings brought under Rule 12(c) as it does to a motion to dismiss for failure to state a claim brought under Rule 12(b)(6)." U.S. v. Morgan, No. CV 407-125, 2010 WL 11537561, at *2 (S.D. Ga. Mar. 30, 2010).

"Where the plaintiff moves for judgment on the pleadings, the fact allegations of the answer are taken to be true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer." WC Oil & Gas LLC v. Alpine Dev., LLC, No. 4:19-CV-00117-SCJ, 2020 WL 4747619, at *2 (N.D. Ga. June 30, 2020).  Importantly, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of

Rule 12(b)(6) … [and] will not require conversion of the motion into a motion for summary judgment." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

Georgia courts grant judgment on the pleadings to plaintiffs where the pleadings demonstrate judgment as a matter of law is warranted. See e.g. WC Oil & Gas LLC, 2020 WL 4747619, at *2 (granting judgment on pleadings where "[u]pon review of the facts alleged in the Complaint, which have been admitted by [defendants], the Court finds that Plaintiffs have established each element of their breach of contract claim"); Ortez v. S. Asset Recovery, Inc., No. 1:12-CV-04296-AT-JFK, 2013 WL 12382888, at *9 (N.D. Ga. May 24, 2013), report and recommendation adopted, 2013 WL 12382886 (N.D. Ga. June 27, 2013) (granting judgment on the pleadings to Plaintiff on certain counts of the complaint); F.D.I.C. v. Jackson, No. 1:11-CV-2134-RWS, 2012 WL 568226, at *2 (N.D. Ga. Feb. 17, 2012) (granting judgment on the pleadings to Plaintiff).

**B.     Interpretation of Insurance Policies**

"[I]nsurance in Georgia is a matter of contract, and this Court has long held that such contract disputes are well suited for adjudication by summary judgment because construction of a contract is ordinarily a matter of law for the court." Goldeagle Ventures, LLC v. Covington Specialty Ins. Co., 349 Ga. App. 446, 448

(2019). "[U]nambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured." Id., at 449. "Even if a contract might be ambiguous, jury questions are not presented unless the application of the rules of contract construction fails to resolve the ambiguity." Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 424 (2003).

"[A]n insurer seeking to defeat a claim based on a policy exclusion has the burden of proving that the exclusion is applicable." Dolan v. Auto Owners Ins. Co., 333 Ga. App. 601, 604 (2015). "[A]n insurer's duty to defend is determined by comparing the allegations of the underlying complaint against the provisions of the policy." Capitol Specialty Ins. Corp. v. PTAV, Inc., 331 F. Supp. 3d 1329, 1334 (N.D. Ga. 2018). "[A]n insurer can rely solely on the allegations contained within the complaint to establish that a policy exclusion precludes coverage." Id. See also First Specialty Ins. Corp. v. Flowers, 284 Ga. App. 543, 544 & n.2 (2007).

While the duties to defend and indemnify are distinct, "[a]s a general matter, if there is no duty to defend, there is no duty to indemnify." Auto-Owners Ins. Co. v. Unit Owners Ass'n of Riverview Overlook Condo., Inc., No. 1:13-CV-3012-TWT, 2014 WL 5465286, at *2 (N.D. Ga. Oct. 28, 2014). An insurer must defend its insured against any claim that potentially falls within the scope of its policy." Id.

11

However, in Georgia, "an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others." Sorema N. Am. Reinsurance Co. v. Johnson, 258 Ga. App. 304, 306 (2002) (citations omitted). "When an exclusion is unambiguous and capable of but one reasonable construction, the trial court must expound the contract as made by the parties. Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." Barnes v. Greater Ga. Life Ins. Co., 243 Ga. App. 149, 150 (2000).

## IV.   ARGUMENT AND CITATION TO AUTHORITY

The Court should grant Plaintiff judgment on the pleadings and declare that: (a) MUSIC has no duty to defend Tort Defendants from claims or allegations having any connection of whatever kind to an "assault" or "battery," as those terms are defined in the AB Exclusion; and (b) MUSIC has no duty to defend or indemnify Tort Defendants in the Underlying Case.

## A.   The Court Should Declare That MUSIC Has No Duty To Defend Allegations Having <u>Any Connection Of Whatever Kind</u> To An "Assault" or "Battery."

This Court should broadly interpret the AB Exclusion to bar coverage for any claims or allegations having any connection to the assaults and batteries allegedly

12

suffered by Tort Claimants.  In <u>Capitol Specialty</u>, a tort claimant was abducted from a parking lot before being sexually assaulted and raped.  331 F.Supp. 3d at 1332-33. The tort claimant and her husband later sued businesses adjacent to the parking lot, alleging they negligently failed to maintain a safe environment, created a nuisance, and for loss of consortium.  <u>Id.</u> at 1335.  An insurer of two businesses filed a declaratory judgment action seeking a ruling it had no duty to defend or indemnify its insureds in the underlying tort suit because of an assault or battery exclusion.  <u>Id.</u> at 1333.

Under the insurance policy in <u>Capitol Specialty</u>, the insurer agreed to cover liability for "damages because of 'bodily injury' ... and 'personal and advertising injury."  <u>Id.</u> at 1334.  However, the policy also contained an assault or battery exclusion barring coverage for any claim seeking damages "arising out of, resulting from, or in connection with" an assault or battery.  <u>Id.</u> at 1334-35.  The policy defined "assault or battery" to include, in addition to its common meaning, "sexual abuse, sexual assault, intimidation, sexual harassment" and other acts.  <u>Id.</u> at 1335. Ultimately, the court held all of the tort claimant's claims against the businesses were excluded under the policy because "all of the claims arise out of, result from, or are *in connection with* an assault or battery, and are therefore excluded under the policy." <u>Id.</u> (emphasis in original).

13

Here, the AB Exclusion is even broader than in <u>Capitol Specialty</u>.  It bars coverage for any bodily injury, property damage, or personal and advertising injury "caused by, arising out of, resulting from, ***or in any way related to*** an assault or battery…."  Doc 1-1, p. 16 (emphasis added).  As defined by Merriam-Webster, "in any way related to" broadly means <u>a connection of whatever kind</u>.  <u>See</u> Merriam-Webster Dictionary, "Any" ("Any" means "one or some indiscriminately of whatever kind" or "whatever quantity."), <u>id.</u>, "Way" ("Way" means a "manner or method of doing or happening"), <u>id.</u>, "Relate to" ("Relate to" means "to connect (something) with (something else))."[3]  <u>See also</u> <u>State Farm Fire & Cas. Co. v. Bauman</u>, 313 Ga. App. 771, 774 (2012) (the "plain, ordinary, and popular meaning as supplied by dictionary" applies).

Indeed, this Court and the Eleventh Circuit interpret the phrase "in any way related to" very broadly.  <u>See</u> <u>HR Acquisition I Corp. v. Twin City Fire Ins. Co.</u>, 547 F.3d 1309, 1316 (11th Cir. 2008) (in an exclusion, the phrase "in any way related to" is "very broad language"); <u>Capitol Specialty</u>, 331 F. Supp. 3d at 1336 ("The clear import of such broad language indicates that the parties intended to exclude from coverage bodily injuries in any way related to or caused by that conduct defined as

---

[3] <u>Available at</u> https://www.merriam-webster.com/dictionary/any; https://www.merriam-webster.com/dictionary/way; https://www.merriam-webster.com/dictionary/relate%20to (all last accessed August 12, 2021).

an assault or battery."). <u>See also</u> <u>AKN Holdings, LLC v. Great Am. E & S Ins. Co.</u>, No. 2:21-CV-02216-SB-E, 2021 WL 2325647, at *2 (C.D. Cal. May 14, 2021) (exclusion barring coverage for allegations "in any way related to" breach of contract "is extraordinarily broad" and "requires only a minimal causal connection or incidental relationship"); <u>OneBeacon Am. Ins. Co. v. City of Zion</u>, 119 F. Supp. 3d 821, 839 (N.D. Ill. 2015) (finding coverage excluded and "not[ing] that the Policy's language of 'arising directly' and 'in any way related to' is quite broad").

With such a broad meaning applicable to the exclusionary language in the AB Exclusion, a declaration that MUSIC has no duty to defend Tort Defendants from any claims or allegations of "bodily injury," "property damage," or "personal and advertising injury" that have <u>a connection of whatever kind</u> to an "assault" or "battery" is supported by binding precedent and is warranted here.

**B.   The Court Should Declare That MUSIC Has No Duty To Defend Or Indemnify The Tort Defendants In The Underlying Case.**

Assault or battery exclusions are commonplace in liability policies and are routinely enforced to bar coverage. <u>See</u> 43 Am. Jur. 2d Insurance § 673 ("A liability policy may, by its terms, specifically exclude coverage for claims arising out of an assault and battery."). Notably, Georgia courts often rely on such exclusions in finding that claims are not covered. <u>See</u> <u>Capitol Specialty</u>, 331 F.Supp. 3d 1329 (finding that allegations of sexual assault fell within an AB Exclusion); <u>Pilz v.</u>

Monticello Ins. Co., 267 Ga. App. 370, 370 and 372 (exclusion for "bodily injury arising out of assault and battery" barred coverage for a claim that a daycare employee took a child "to a shed, during which time [employee] verbally and physically attacked [child], bloodied his nose, and caused several injuries, both mental and physical"); Dynamic Cleaning Serv., Inc. v. First Financial Ins. Co., 208 Ga. App. 37, 38 (exclusion for any claim "based on assault and battery" precludes coverage for negligence suit where employee of Dairy Queen allowed a former employee to enter the restaurant after hours and who then stabbed the manager); Cotton States Mut. Ins. Co. v. Crosby, 244 Ga. 456, 457-458 (1979) (exclusion for "bodily injury" bars coverage for a "tort for the negligence of [Tort Defendants] in permitting conditions to exist that would allow the rape to occur").

Consistent with these holdings, at least one foreign court has held that an insured hotel facing claims for negligence related to its role in sex trafficking is not covered on the basis of an assault or battery exclusion. See Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc., 781 F. App'x 57, 60 (3d Cir. 2019) ("All alleged injuries in this complaint are the result of exploitation and assault by traffickers and customers with whom [tort claimant] engaged in commercial sex acts. Accordingly, the assault and battery were the 'but for' causes of the injuries [tort claimant] claims.... The assault and battery exclusion... encompasses claims arising both from an assault or battery

and from a failure to prevent or suppress an assault or battery. This language unambiguously bars coverage for [tort claimant's] claims.")

Here, the AB Exclusion defines "assault" as "any intentional act, or attempted act or threat to inflict injury" and expressly includes "sexual abuse or harassment." Doc 1-1, p. 17. "Battery" is defined as "the intentional or reckless use of force… or offensive touching or sexual molestation…." Id. If Tort Claimants' claims and allegations have any connection of whatever kind to an "assault" or "battery" as those terms are defined in the AB Exclusion, then MUSIC has no duty to defend or indemnify Tort Defendants from them. However, *none* of Tort Claimants' allegations are wholly unrelated to an assault or battery. Rather, *all* of Tort Claimants' allegations are related to and intertwined with multiple assaults and/or batteries. Those allegations are: (1) Tort Claimants were forcibly trafficked for sex, (2) Tort Claimants were sexually assaulted and/or battered by patrons, (3) Tort Claimants were harbored, held, confined and detained against their will so that they may be sex trafficked, and (4) Tort Defendants negligently failed to prevent the same or profited or conspired to profit from the same.  See e.g. Doc 1-2, ¶¶ 21-36; 51; 90; 111; 117; 133; 141.  As set forth below, each allegation or claim is excluded.

    1.    <u>Allegations of forcible sex trafficking.</u>

Allegations and claims related to forcible sex trafficking are excluded because

they qualify as *both* an assault and battery, even though they need only qualify as either to be excluded. For at least two reasons, such allegations amount to an "assault." First, they involve an "act… or threat to inflict injury." Doc 1-1, p. 17. Tort Claimants allege they did not consent to be trafficked and instead were trafficked under force or threat of injury. See Doc 1-2, ¶ 22 ("Minor sex trafficking is any sexually explicit conduct for which anything of value is directly or indirectly given, which is obtained from an individual who is under the age of 18…. [Tort Claimants] were both victims of minor sex trafficking at [Tort Defendants'] hotel…."); ¶ 25 ("[Tort Claimants] … were not prostitutes, but minor victims of sex trafficking."); ¶ 28 ("While they were trafficked for sex at the Norcross Red Roof Inn, [Tort Claimants] each exhibited numerous well-known and visible signs of a minor sex trafficking victim… including… injuries…."); ¶ 133 ("While [Tort Claimants] were trafficked for sex at the Norcross Red Roof Inn, they were prostituted by being forced to perform sexual acts in exchange for money or other items of value."); ¶ 141 ("[Tort Claimants] … were forced to engage in sexual acts in exchange for money").

Second, in the AB Exclusion, "assault" includes "sexual abuse or harassment." Doc 1-1, p. 17. Tort Claimants allege they were injured or threatened with injury to coerce them to perform unwanted sexual acts. See e.g. Doc 1-2 ¶ 141

("[Tort Claimants] … were forced to engage in sexual acts"). Performance of unwanted sexual acts is *per se* "sexual abuse" or "harassment." <u>See</u> Merriam-Webster, "Sexual Abuse" ("sexual abuse" is "the infliction of sexual contact upon a person by forcible compulsion")[4]; <u>id.</u>, "Sexual Harassment" ("Sexual harassment" is "uninvited and unwelcome verbal or physical behavior of a sexual nature").[5]

Separately, allegations of forced sex trafficking amount to a "battery" because they involve the "use of force… or offensive touching or sexual molestation…." Doc 1-1, p. 17. Tort Claimants allege they were "forced" to engage in sexual acts and were "injured" when compelled to do so. <u>See e.g.</u> Doc 1-2 ¶¶ 28, 141. Moreover, Tort Claimants allege the purpose of that force was to compel them to engage in unwanted sexual acts, which is an "offensive touching" or "sexual molestation." <u>See</u> Merriam-Webster, "Molestation" ("molestation" means "to make unwanted or improper sexual advances towards (someone); *especially***:** to force physical and usually sexual contact on (someone)")[6].

---

[4] <u>Available at</u> https://www.merriam-webster.com/legal/sexual%20abuse (last accessed August 16, 2021).

[5] <u>Available at</u> https://www.merriam-webster.com/dictionary/sexual%20harassment (last accessed August 16, 2021).

[6] <u>Available at</u> https://www.dictionary.com/browse/molestation (last accessed August 16, 2021).

2.     Allegations of sexual assault or battery by hotel patrons.

Tort Claimants' allegations that they were sexually assaulted by patrons are allegations of "assault" and "battery" under the AB Exclusion.  As set forth above, "assault" includes "sexual abuse or harassment" (Doc 1-1, p. 17), and "sexual abuse" and "sexual harassment" are defined, respectively, as "the infliction of sexual contact upon a person by forcible compulsion" and the "uninvited and unwelcome verbal or physical behavior of a sexual nature."  Tort Claimants' allegations that hotel patrons performed unwanted sexual acts on them qualify as both an "assault" and a "battery".  See e.g. Doc 1-2, ¶ 25 ("[Tort Claimants]… were not prostitutes, but minor victims of sex trafficking."); ¶ 30 ("While [Tort Claimants] were trafficked at the Norcross Red Roof Inn, 8–10 older men visited the sex trafficker's rooms each day, each for short periods of time. Defendants knew or should have known that the number of daily, older male visitors to the room was obviously indicative of not only prostitution, but also of minor sex trafficking….").

Further, in the AB Exclusion, "battery" includes the "sexual molestation" or "offensive touching" (Doc 1-1, p. 17) and those terms are defined, respectively, as "to force physical and usually sexual contact on (someone)" and "unpleasant or disagreeable" instance of "put[ing] the hand, finger, etc., on or into contact with (something) to feel it."  Unwanted sexual contact is *per se* an allegation of sexual

20

molestation or offensive touching.  See e.g. Doc 1-2, ¶¶ 25, 30.

      3.      <u>Allegations of harboring, holding, confinement, or detention against Tort Claimants' will.</u>

Allegations that Tort Claimants were held against their will are also excluded for at least two reasons.  First, they amount to an "assault" because they involve an "act… or threat to inflict injury."  Doc 1-1, p. 17.  Tort Claimants allege that force or the threat of force was used to coerce them to be held against their will.  See e.g., ¶ 28 (Tort Claimants suffered "injuries"), ¶ 51 (Tort Claimants "suffered substantial physical, emotional, and psychological harm …."), ¶ 111 ([Tort Defendants'] "actual and constructive knowledge of … sex trafficking … caus[ed] unreasonable risk of injury invitees, including [Tort Claimants].", ¶ 117 ([Tort Defendants'] "acts and omissions …were the proximate causes of the injuries sustained by [Tort Claimants]", ¶ 142 ([Tort Defendants] allegedly participated in or allowed the "holding, confining, and detaining persons who were *forced to* engage in sexual acts in exchange for money…") (emphasis added).

Second, Tort Claimants allege they were held against their will *for the purpose of being sexually trafficked*, which at least relates to allegations of "assault" or "battery."  See Doc 1-2, ¶ 142 (Tort Defendants' alleged "acts of racketeering had the same or similar methods of commission, including but not limited to harboring, holding, confining, and detaining persons who were forced to *engage in sexual acts*

21

in exchange for money at the Norcross Red Roof Inn") (emphasis added).  Such allegations that Tort Claimants were forced to perform unwanted sexual acts are allegations of "assault" or "battery" excluded by the AB Exclusion.

        4.      <u>Tort Claimants' Claims are Excluded.</u>

All of Tort Claimants' claims against Tort Defendants arise from the latter's purported negligence or profiting/participating in the allegations set forth above. Because all such allegations are excluded, all claims arising from them are also excluded from coverage, and the inquiry ends there.

For at least two additional reasons, the AB Exclusion expressly excludes Tort Claimants' claims.  First, Tort Claimants allege negligence; *i.e.* that Tort Defendants should have but failed to prevent Tort Claimants from being sex trafficked.  <u>See</u> Doc 1-2, ¶¶ 95-119.  For instance, Tort Claimants broadly allege that "[Tort Defendants] were negligent and said negligence proximately caused [Tort Claimants'] injuries…."  <u>Id.</u>, ¶ 116.  Examples of such alleged negligence include failing to keep a "safe" "premises"; failing to "provide appropriate and effective security personnel"; "failing to properly retain, hire, train, and supervise… employees"; and "failing to warn invitees of known hazards at the property…."  <u>Id.</u>, ¶ 116(a), (d), (f), (o).  *All* negligence claims are expressly excluded by the terms of the AB Exclusion. <u>See</u> Doc 1-2, p. 16 (excluding claims of assault or battery caused by, arising out of,

or resulting from "negligent… conduct by you, your employees, patrons or any other persons").  Likewise, many of the specific instances of negligence alleged are expressly excluded.  See id. (excluding claims of assault or battery caused by, arising out of, or resulting from "[t]he failure to provide a safe environment including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or … [t]he negligent employment, investigation, supervision, hiring, training or retention of any person….").

Second, Tort Claimants allege violations of Georgia RICO; *i.e.* that Tort Defendants purportedly profited from or participated in Tort Claimants' sexual trafficking.  See Doc 1-2, ¶¶ 120-161.  The AB Exclusion expressly bars such claims of intentional wrongdoing.  See Doc 1-1, p. 16 (excluding claims of assault or battery caused by, arising out of, or resulting from "the direct or indirect instigation, instruction or direction, by you, your employees, patrons or any other persons").

For these reasons, all allegations and claims set forth by Tort Claimants are excluded by the AB Exclusion.  Accordingly, the Court should declare that MUSIC has no duty to defend or indemnify Tort Defendants in connection with them.

## V. CONCLUSION

WHEREFORE, MUSIC requests that this Court GRANT its Motion for Judgment on the Pleadings.

Respectfully submitted this 22nd day of September, 2021.

**MORRIS, MANNING & MARTIN, LLP**

*/s/ Seslee S. Smith*
Seslee S. Smith
Georgia Bar No. 663377
Ryan C. Burke
Georgia Bar No. 336130
Nathan R. Miles
Georgia Bar No. 829924
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
Tel: (404) 233-7000
Fax: (404) 365-9532

*Attorneys for Plaintiff MESA Specialty*
*Underwriters Insurance Company*

## **LR 5.1(C) CERTIFICATE OF COMPLIANCE**

Per LR 7.1(D), I certify that this pleading was prepared per LR 5.1(C) in Times New Roman, 14 point type face.

/s/ Seslee S. Smith
Seslee S. Smith
Georgia Bar No. 663377

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this day electronically filed the foregoing **PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court by using the CM/ECF system which will automatically send e-mail notification to all counsel of record, as follows:

Ankur P. Trivedi
Groth, Makarenko, Kaiser & Eidex
335 Peachtree Industrial Blvd.
Suite 2206
Suwanee, GA 30024
at@gmke.law

*Attorneys for Defendants Khamlai Lodging, LLC and Khamlai Management, LLC*

Shattuck Ely
Fellows LaBriola, LLP
Peachtree Center
Suite 2300 South Tower
225 Peachtree Street, N.E.
Atlanta, Georgia 30303
tely@fellab.com

*Attorneys for Defendants Red Roof Inns, Inc. and Red Roof Franchise, LLC*

Patrick J. McDonough
pmcdonough@atclawfirm.com
Donald L. Swift III
dswift@atclawfirm.com
Jonathan S. Tonge
jtonge@atclawfirm.com
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097

*Attorneys for anonymous Defendants*

This 22nd day of September, 2021.

/s/ Seslee S. Smith
Seslee S. Smith, Esq.

14393310 v10