IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br><br><br>KHAMLAI LODGING, LLC, et al.,<br><br><br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:21-CV-2474-TWT |

OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 25] and the Defendants N.R. and R.I.'s Motion for Hearing [Doc. 34]. For the reasons set forth below, the Plaintiff's Motion for Judgment on the Pleadings [Doc. 25] is DENIED, and the Defendants N.R. and R.I.'s Motion for Hearing [Doc. 34] is DENIED as moot.

I. Background

The Plaintiff, MESA Underwriters Specialty Insurance Company ("Mesa"), issued Policy No. MP0132001000019 ("the Policy") to the Defendants Khamlai Lodging, LLC, and Khamlai Management, LLC (collectively, "the Khamlai Entities"). (Compl. ¶¶ 1–5, 16.) The Khamlai Entities own and operate a Red Roof Inn located in Norcross, Georgia. (*Id.* ¶ 15.) The Policy

includes commercial general liability ("CGL") coverage, which covers "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.* ¶ 22.) The CGL coverage also covers damages paid by the insureds for any "personal and advertising injury." (*Id.* ¶ 23.) The Policy defines "personal and advertising injury" as an injury "arising out of," among other things, "false arrest, detention or imprisonment[.]" (*Id.*, Ex. A, at 41.) In addition to the Khamlai Entities, the Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLC (collectively, "the Red Roof Entities") are named as additional insureds under the Policy's CGL coverage. (*Id.* ¶ 21.)

In November 2020, the Khamlai Entities were sued in Gwinnett County Superior Court by the Defendants N.R. and R.I ("the Claimants"). (*Id.* ¶¶ 15, 32.) In their lawsuit ("the Tort Action") against the Khamlai Entities, the Claimants allege that as minors they were trafficked for sex with patrons at the Norcross Red Roof Inn in 2016. (*Id.* ¶¶ 15, 34.) As a result of this trafficking, the Claimants brought two claims against the Khamlai Entities and the Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLC: (1) negligence for failure to prevent the sex trafficking that occurred on the premises, and (2) a RICO claim for "benefiting from or conspiring in racketeering activities with regard to the sex trafficking" of the Claimants. (*Id.* at 15.) The Khamlai Entities submitted a claim to Mesa regarding the Tort Action under the belief that the Policy entitled them to a defense and

2

indemnification regarding the Tort Action. (*Id.* ¶¶ 44–46.) Mesa began defending the Khamlai Entities under a reservation of rights but soon came to the belief that the Policy's assault and battery exclusion precluded coverage. (*Id.* ¶¶ 30, 47–48.) This exclusion reads, in part:

> I. This insurance does not apply to locations specified in the above Schedule for "bodily injury", "property damage", "personal and advertising injury", or medical payments under Coverage C, caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" when that "assault" or "battery" is caused by, arising out of, or results from, in whole or in part from:
>
>   A. The direct or indirect instigation, instruction or direction, by you, your employees, patrons or any other persons, or
>   B. The failure to provide a safe environment including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or
>      . . .
>   D. Negligent, reckless, or wanton conduct by you, your employees, patrons or any other persons[.]

(*Id.* ¶ 26.) After Mesa informed the Khamlai Entities of its coverage determination, a supplemental reservation of rights was issued, allowing Mesa to continue its defense of the Khamlai Entities pursuant to certain conditions. (*Id.* ¶ 48.)

Because Mesa and the Khamlai Entities disagree as to the extent of the Policy's coverage here, Mesa filed this suit seeking a declaration that the Policy's assault and battery exclusion precludes coverage of the Khamlai Entities' claim and that Mesa has no duty to defend or indemnify the Khamlai

3

Entities and the Red Roof Entities in the Tort Action. (*Id.* ¶ 55.) Mesa now seeks judgment on the pleadings for its declaratory claim.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court should grant a motion for judgment on the pleadings where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). However, this familiar standard changes somewhat where the Plaintiff is the movant. As the Court has described:

> Where the plaintiff moves for judgment on the pleadings, the fact allegations of the answer are taken to be true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer. Thus, [the] plaintiff may not move for judgment on the pleadings where the answer raises issues of fact which if proved would defeat recovery.

*WC Oil & Gas LLC v. Alpine Dev., LLC*, 2020 WL 4747619, at *2 (N.D. Ga. Jun. 30, 2020) (internal quotation marks and citations omitted).

## III.   Discussion

The Claimants allege that they were victims of heinous crimes, and the Tort Action was brought to hold the Khamlai and Red Roof Entities responsible

for their alleged role in those crimes. Those allegations are distressing, but the Court here has no role in adjudicating those claims of criminal and tortious actions. Instead, the Court must determine whether the actions of the traffickers and the insureds fall within the Policy's coverage. The Plaintiff argues it is entitled to judgment on the pleadings because the assault and battery exclusion is broad enough to preclude coverage for all of the tort claims brought against its insureds by the Claimants. In particular, the Plaintiff argues that because the Policy excludes coverage for injuries "in any way related to an assault or battery," no coverage attaches regarding the sexual assaults and batteries suffered by the Claimants. (Pl.'s Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 14–17.) The Claimants and the Khamlai Entities filed separate responses. The Claimants argue that the Plaintiff has failed to satisfy its burden to show that there exists "*no set of provable facts* under which coverage would apply." (Claimant Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, at 5.) In their view, an assault or battery is not an element of their claims against the Khamlai Entities, and thus their case can proceed "without a concomitant showing that an assault or battery took place[.]" (*Id.* at 6.) The Claimants further note that they have filed an amended complaint in the Tort Action and do not allege any actions that would represent an assault or battery under the Policy's definition. (*Id.* at 11–17.) The Khamlai Entities argue in response that the Policy's definitions of "assault" and "battery" are vague and ambiguous. (Khamlai

5

Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, at 6–8.) Finally, both the Claimants and the Khamlai Entities argue that the language of the assault and battery exclusion conflicts with the Policy's "personal and advertising injury" coverage, rendering the Policy illusory. (*Id.* at 9–10; Claimant Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, at 20–25.) In reply, the Plaintiff argues that the Claimants tort claims all relate in some way to assault and battery as defined by the Policy and that the Policy's coverage is neither ambiguous nor illusory. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 6–13.)

The Claimants properly define the Plaintiff's burden at this stage: to prevail on its Rule 12(c) motion, the Plaintiff must show that all of the Claimants' allegations relate to assault or battery under any set of facts. The Court will review the Amended Complaint in the Tort Action to determine the scope of the Khamlai Entities' potential exposure, a decision the Plaintiff does not oppose. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 13 (arguing that the Original Complaint and the Amended Complaint suffer from identical defects).) In the Amended Complaint, the Claimants bring seven claims: two counts of negligence in allowing minor sex trafficking and false imprisonment (Counts I & II); common law and statutory claims of public nuisance (Counts III & IV); and three counts of various racketeering claims

(Counts V–VII).¹ (*See* Claimant Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, Ex. 1.) If there exists some set of facts in which the Khamlai Entities could be liable to the Claimants on these claims that does not relate to an assault or battery, the Plaintiff is not entitled to its requested declaration at this stage.

The Policy provides definitions for both assault and battery. The Policy defines "assault" as:

> [A]ny intentional act, or attempted act or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, sexual abuse or harassment, intimidation, verbal abuse, and any threatened harmful or offensive contact between two or more persons.

(Compl., Ex. A, at 17.) "Battery" is defined in the assault and battery exclusion as:

> [T]he intentional or reckless use of force including a physical altercation or dispute between persons, or offensive touching or sexual molestation against another, resulting in injury whether or not the actual injury inflicted is intended or expected. The use of force includes, but is not limited to the use of a weapon.

(*Id.*) The Parties disagree as to how the experiences of the Claimants should be categorized under these definitions. The Claimants argue that they were neither assaulted nor battered in the course of being trafficked; instead, "the Amended Complaint makes clear that the [Claimants] were tricked and

---

¹ Count V and all following Counts appear mislabeled. The Court lists them as if they were properly labeled.

7

manipulated by their trafficker into believing that they were voluntarily participating in commercial sex acts." (Claimant Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, at 11.) Because the manipulation was purely emotional and mental rather than physical, the Claimants argue that they alleged no act that would fall within the Policy's definitions of "assault" and "battery." (*Id.* at 12.) To support this perspective, the Claimants point to *Grace v. State*, 347 Ga. App. 396, 397–99 (2018), in which the defendant was found guilty of trafficking a minor for sexual servitude when the sexual conduct was initiated by the victim. (*Id.* at 8–9.) The Amended Complaint analogizes the Claimants' situation to that of the victim in *Grace*, arguing that they were the victims of sex trafficking despite the absence of "beatings or threats of force." (*Id.*, Ex. A ¶¶ 3–4.) In contrast, the Plaintiff argues that the Claimants were victims of statutory rape, which constitutes an assault or battery under the assault and battery exclusion. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 1, 3.) The Plaintiff notes that the Policy's definitions of "assault" and "battery" encapsulate "sexual abuse" and "offensive touching or sexual molestation," respectively. (*Id.* at 3–5.) As a result, the Plaintiff argues that all of the claims in the Amended Complaint are in some way related to "sexual abuse," "offensive touching," or "sexual molestation," and thus fall within the assault and battery exclusion. (*Id.* at 4–5.)

The Claimants rely heavily on the language of the relevant Georgia statutes to argue that the trafficking they endured occurred without an assault

8

or battery. However, "Georgia law permits an insurance company to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, [and] thus companies are free to insure against certain risks while excluding others." *Georgia Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719 (2016) (internal quotation marks omitted). Rather than rely purely on the definition found in O.C.G.A. § 16-5-20 or § 16-5-23, the Plaintiff provides its own definition of what qualifies as "assault" and "battery" for purposes of the assault and battery exclusion. While the Claimants argue these definitions are "poorly drafted" and "jumbled," they are not contrary to Georgia law and thus represent the operative language in this dispute. (Claimant Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, at 10–11.)

The Policy's definitions are similarly structured, providing a core definition of "assault" and "battery" followed by examples of actions that could fall within these general definitions. Under the Policy, an "assault" is "any intentional act, or attempted act or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of injury[.]" (Compl., Ex. A, at 17.)) The Policy provides examples of actions that could constitute "assault," including "physical injury, sexual abuse or harassment, intimidation, verbal abuse, and any threatened harmful or offensive contact . . . ." (*Id.*) The Policy defines "battery" as "the intentional or reckless use of force . . . resulting in injury whether or not the actual injury is intended or expected." (*Id.*) As examples, the Policy provides that "battery" includes "a

physical altercation or dispute between persons, or offensive touching or sexual molestation against another[.]" (*Id.*) These examples included in the definitions of "assault" and "battery" are not themselves defined in the Policy, and the Parties dispute whether the Claimants' experiences fall within these definitions. Georgia law outlines how this Court must resolve this dispute:

> [W]hen faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction.

*Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111–12 (2012) (internal quotation marks omitted). "Words used in the policy are given their usual and common meaning, and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Smith*, 298 Ga. at 719 (internal quotation marks, punctuation, and citations omitted). "Unambiguous terms must be given effect even if beneficial to the insurer and detrimental to the insured, and Georgia courts will not strain to extend coverage where none was contracted or intended." *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289, 1293 (N.D. Ga. 2020) (internal quotation marks omitted).

The Plaintiff is correct that the Claimants' allegations against the Khamlai and Red Roof Entities clearly relate to "sexual abuse" and "offensive touching or sexual molestation" when read as a layman. But the definitions

10

also make clear that "sexual abuse," "offensive touching," and "sexual molestation" are merely examples meant to support the core definitions of "assault" and "battery." Any argument that the Claimants' allegations relate solely to these examples, rather than the core definitions, is insufficient to show that they fall within the assault and battery exclusion. To fall within the Policy's core definitions of "assault" and "battery," these allegations must relate to either an "intentional act . . . to inflict injury to another including any conduct that would reasonably place another in apprehension of injury" or "intentional or reckless use of force . . . resulting in injury[.]" The Claimants' Amended Complaint alleges that they were trafficked but that they did not suffer either an intentional act to inflict injury or an intentional or reckless use of force. The Plaintiff argues that sex trafficking falls within these definitions as a matter of law, citing many out-of-circuit cases and one Georgia Court of Appeals case that allegedly support this proposition. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 7–10.) However, these cases stand for the proposition that courts may presume that an insured who sexually abuses a minor intends any resulting injuries from his abuse. *See, e.g.*, *Roe v. State Farm Fire & Cas. Co.*, 188 Ga. App. 368, 369 (1988) ("We conclude that he must be presumed under such circumstances to have intended those injuries which naturally and unavoidably flowed from his criminal misconduct[.]") Therefore, the Court finds that this argument fails.

11

The Plaintiff also highlights two paragraphs in the Amended Complaint in which the Claimants allege they suffered physical harm or injuries. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 10; Claimant Defs.' Br. in Opp'n to Pl.'s Mot. for Judgment on the Pleadings, Ex. A, ¶¶ 46, 165.) In the Plaintiff's view, "[t]here can be no credible contention that daily and repeated non-consensual sex which resulted in substantial physical harm are not intentional acts to inflict injury or intentional uses of force." (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Judgment on the Pleadings, at 10.) Ultimately, the evidence in the Tort Action might reveal such intentional acts or uses of force. But the Court cannot assess the credibility of the Claimants' allegations at this stage. In deciding this Rule 12(c) motion, the Court is limited to the allegations made in the Claimants' Amended Complaint. As pleaded, the Amended Complaint does not allege the required intentional act or use of force, instead alleging only that the Claimants suffered some physical harm as a result of the Khamlai Entities' actions or inaction. As a result, the Court finds that there is a set of facts in which these allegations fall outside of the Policy's assault and battery exclusion. At this stage of the proceedings, the Plaintiff is not entitled to a declaration that the assault and battery exclusion excludes coverage for the Tort Action, and its Motion for Judgment on the Pleadings is denied.

## IV. Conclusion

For the reasons set forth above, the Plaintiff's Motion for Judgment on the Pleadings [Doc. 25] is DENIED. Because the Court has decided the Plaintiff's Motion without the need for a hearing, the Defendants N.R. and R.I.'s Motion for Hearing [Doc. 34] is DENIED as moot.

SO ORDERED, this   18th   day of April, 2022.

                                                   THOMAS W. THRASH, JR.
                                                   United States District Judge